UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

OMAR ASSAF JUNIOR,

    Petitioner,

v().                                                     Case No: 6:23-cv-810-JSS-LHP

SECRETARY OF STATE and
UNITED STATES ATTORNEY
GENERAL,

    Respondents.
_____/

## ORDER

Petitioner Omar Assaf Junior seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Dkt. 2; Dkt. 25.) The United States opposes the petition. (Dkt. 22.) Upon consideration, for the reasons outlined below, the petition is dismissed without prejudice.

## BACKGROUND

Petitioner is a Brazilian national. (*See* Dkt. 2 at 1.) In 2009, Petitioner shot and killed a man outside a bar in Curitiba, Brazil, for which he was convicted of "aggravated homicide and sentenced to [sixteen] years in prison." (*Id.* at 2.) Petitioner appealed his conviction but was unsuccessful. *In the Matter of the Extradition of Omar Assaf Junior*, NO: 6:22-mj-1815-LHP-1, Dkt. No. 42 at 4 (M.D. Fla. April 14, 2023). Accordingly, Brazilian authorities issued a warrant for his arrest. *Id.* By that time, however, Petitioner was in the United States. *Id.*

Once here, Petitioner "applied for relief from removal under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment." (Dkt. 2 at 2.) A United States Immigration Judge granted Petitioner's request "based on the likelihood he would be tortured if returned to Brazil." (*Id.* at 3.) Despite the ruling, the United States moved to extradite Petitioner pursuant to 18 U.S.C. § 3184 and an extradition treaty with Brazil. (*Id.*) As part of the extradition process, a United States magistrate judge held an evidentiary hearing to determine whether Petitioner could be properly extradited to Brazil. *See In the Matter of the Extradition of Omar Assaf Junior*, Dkt. No. 42 at 5.

At the hearing, the United States provided certified copies of the criminal complaint, the arrest warrant, the judgment of Petitioner's conviction, and the order denying his appeal, along with "various documents utilized in [Petitioner's] case." *Id.* at 8–9, 11. The United States also furnished copies of its treaty with Brazil and a declaration from Amy Lindsay, an Attorney-Adviser in the Office of the Legal Adviser for the Department of State. *Id.* at 8. Petitioner did not challenge this evidence. *Id.* at 9. Nor did he contest the magistrate judge's findings that (1) the court was "authorized to conduct the extradition proceeding," (2) the court had jurisdiction over Petitioner, (3) the treaty under which the United States sought to extradite Petitioner was "in full force and effect," (4) there was probable cause to believe that Petitioner committed the crime for which he was convicted, and (5) that Petitioner was convicted of an offense covered by the applicable treaty. *Id.* at 8–14. Instead, he argued that he

should not be extradited because "he [would] assuredly be tortured and killed" if he were returned to Brazil. *Id.*

The magistrate judge considered this argument but ultimately found it to be unavailing for three reasons. *Id.* at 14–19. To begin, the magistrate judge concluded that the rule of non-inquiry precluded consideration of the procedures or treatment awaiting Petitioner upon his return to Brazil, as those considerations are reserved for the State Department. *Id.* at 15. In any case, the magistrate judge determined that Petitioner's argument was premature and thus not ripe for review, as it assumed that the Secretary of State would surrender him to Brazil, which has yet to be decided. *Id.* at 17–18. Finally, the magistrate judge rejected Petitioner's argument that his procedural due process rights would be violated unless the court considered his Convention Against Torture arguments at this stage of the process. *Id.* at 18–19. Accordingly, the magistrate judge determined that Petitioner was "extraditable for the offense for which extradition is requested." *Id.* at 19. This habeas petition followed. (Dkt 2.)

## APPLICABLE STANDARD

"Extradition is an executive, not a judicial, function," *Martin v. Warden, Atlanta Pen*, 993 F.2d 824, 828 (11th Cir. 1993), "governed by the relevant extradition treaty and the federal extradition statute," *United States v. Nascimento*, No. 6:19-MC-48-ORL-78GJK, 2019 WL 5853874, at *1 (M.D. Fla. Nov. 8, 2019). "The power to extradite derives from the President's power to conduct foreign affairs." *Martin*, 993 F.2d at

828.  "Respect for the authority of the executive branch in foreign affairs is a well-established theme in our law." *Gonzalez v. Reno*, 212 F.3d 1338, 1349 n.12 (11th Cir. 2000); *see Hernandez v. Mesa*, 589 U.S. 93, 104 (2020) ("matters relating to the conduct of foreign relations . . . are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." (quotation omitted)).

Accordingly, "the judiciary historically has played a limited role in extradition proceedings." *Pajkanovic v. United States*, 353 F. App'x 183, 184–85 (11th Cir. 2009). To begin, the magistrate judge "conducts a hearing simply to determine whether there is evidence sufficient to sustain the charge against the [petitioner] under the provisions of the proper treaty or convention." *Kastnerova v. United States*, 365 F.3d 980, 984 (11th Cir. 2004) (alterations adopted and quotation omitted).  "If the evidence is sufficient, the . . . magistrate [judge] makes a finding of extraditability and certifies the case to the Secretary of State." *Martin*, 993 F.2d at 828.

"Once a magistrate judge certifies an extradition, . . . extradition targets do not have the benefit of a direct appeal." *Arias Leiva v. Warden*, 928 F.3d 1281, 1285 (11th Cir. 2019).  Still, they "can . . . obtain limited collateral review by means of a petition for writ of habeas corpus." *Id.* (internal quotation marks omitted); *accord Afanasjev v. Hurlburt*, 418 F.3d 1159, 1163 (11th Cir. 2005) ("[A] district court's habeas review of a magistrate judge's issuance of a certificate of extraditability is narrow."). "[C]ollateral review through a petition for a writ of habeas corpus generally is limited to determining whether the magistrate had jurisdiction, whether the offense charged is

within the treaty, and whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty." *Pajkanovic*, 353 F. App'x at 185; *accord Kastnerova*, 365 F.3d at 984 ("Review of the magistrate's order is limited to determining whether the magistrate had jurisdiction, whether the offense charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty." (quotation omitted)). Accordingly, habeas review "tests only the legality of the extradition proceedings; the question of the wisdom of extradition remains for the Executive Branch to decide." *Wacker v. Bisson,* 348 F.2d 602, 606 (5th Cir. 1965).

## ANALYSIS

As discussed, habeas corpus review of a magistrate judge's certification of extraditability "is limited to determining whether the magistrate had jurisdiction, whether the offense charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty." *Kastnerova*, 365 F.3d at 984. Here, Petitioner does not challenge the magistrate judge's jurisdiction, nor does he dispute that the Treaty between the United States and Brazil is in force. (*See* Dkt. 2.) The magistrate judge also found probable cause to believe that Petitioner committed the aggravated homicide for which he was convicted, and that the offense fell within the treaty. *In the*

*Matter of the Extradition of Omar Assaf Junior*, Dkt. No. 42 at 13–14.  Petitioner does not contest those findings either.  (*See* Dkt. 2.)

Instead, Petitioner challenges the magistrate judge's order certifying his extradition on the grounds that it "would violate his rights—and the United States' treaty obligations—under the Convention Against Torture and the Foreign Affairs Reform and Restructuring Act," as an immigration judge has previously determined that it is likely that Petitioner would be tortured if he were returned to Brazil.  (Dkt. 2 at 4–5.)  Petitioner acknowledges that the rule of non-inquiry precludes this court from considering his Convention Against Torture claim; nonetheless, he urges the court to "recognize an exception . . . based on the previous finding in his immigration case." (*Id.* at 8, 10.)  *See Martin v. Warden, Atlanta Pen,* 993 F.2d 824, 829 (11th Cir. 1993) (noting that the rule of non-inquiry precludes the court "from assessing the investigative, judicial, and penal systems of foreign nations when reviewing an extradition request.").  To hold otherwise, Petitioner submits, "would violate his Fifth Amendment right to due process in this proceeding." (*Id.* at 10–11.)

Petitioner is not the first to seek an exception to the rule of non-inquiry.  *See, e.g.*, *Martin*, 993 F.2d at 830 n.10.  Yet the Eleventh Circuit "ha[s] expressly rejected the suggestion . . . that the rule of non-inquiry should be displaced when 'a defendant faces procedures in a foreign country antipathetic to a federal court's sense of decency,'" *Hurtado v. United States Atty. Gen.*, 401 F. App'x 453, 456 (11th Cir. 2010) (quoting *Martin*, 993 F.2d at 830 n.10)), and "ha[s] explicitly held that 'judicial intervention in extradition proceedings based on humanitarian considerations is

- 6 -

inappropriate.'" *Id.* (quoting *Martin*, 993 F.2d at 830 n.10); *accord Arias Leiva v. Warden*, 928 F.3d 1281, 1295 (11th Cir. 2019) (explaining that the rule of non-inquiry "applies even when humanitarian concerns are at stake."); *see Escobedo v. United States*, 623 F.2d 1098, 1107 (5th Cir. 1980) ("Alleging that he may be tortured or killed if surrendered to Mexico, [the petitioner] asks that we bar his extradition on humanitarian grounds. However, the degree of risk to [the petitioner's] life from extradition is an issue that properly falls within the exclusive purview of the executive branch." (cleaned up)).

That is not to say that questions about what awaits Petitioner in Brazil are irrelevant to determining whether he should be extradited; instead, there is another branch of government, which has both the final say and greater discretion in these proceedings, to whom these questions are more properly addressed. *See United States v. Kin-Hong*, 110 F.3d 103, 110–11 (1st Cir. 1997) ("The rule of non-inquiry, like extradition procedures generally, is shaped by concerns about institutional competence and by notions of separation of powers."); *Meza v. McGrew*, No. 11-60955-CIV, 2013 WL 12202484, at *5 (S.D. Fla. Sept. 16, 2013) ("The common law rule of non-inquiry reinforces a long-standing division of authority between the Executive and the Judiciary that is rooted in concerns about institutional competency and notions of separation of powers. . . . Humanitarian arguments against extradition, therefore, lie within the sole purview of the Executive Branch of government." (quotation omitted)); *Prasoprat v. Benov*, 421 F.3d 1009, 1016 (9th Cir. 2005) ("[I]t is the role of the Secretary of State, not the courts, to determine whether extradition should be denied on humanitarian grounds or on account of the treatment that the fugitive is likely to

receive upon his return to the requesting state."). Accordingly, the rule of non-inquiry precludes this court from considering whether Petitioner's extradition to Brazil would subject him to torture in violation of the Convention Against Torture.

In any case, Petitioner's challenge to extradition under the Convention Against Torture is not ripe for judicial review. The Eleventh Circuit's decision in *Meza v. United States Att'y Gen.*, 693 F.3d 1350 (11th Cir. 2012), is instructive on this point. In *Meza*, the petitioner fled to the United States after allegedly killing a Honduran government official. *Id.* at 1354. After the United States initiated extradition proceedings against the petitioner, a magistrate judge determined that the petitioner was extraditable. *Id.* The petitioner then applied for a writ of habeas corpus, in which he argued that the magistrate judge lacked authority to issue a certificate of extradition under the Convention Against Torture. *Id.* at 1355. The district court denied the petition, finding, among other things, that it lacked authority to consider whether the Convention Against Torture barred the petitioner's extradition, as the argument fell outside the narrow scope of its review. *See id.* at 1356. On appeal, the Eleventh Circuit declined to decide the issue, as it determined that the petitioner's challenge was premature, as the Secretary of State had not yet decided whether to surrender the petitioner. *Id.* at 1356. Accordingly, the Eleventh Circuit concluded that the petitioner's "argument that the Convention Against Torture [barred] his extradition [was] not ripe for adjudication. *Id.* at 1357 (quotation omitted).

As in *Meza*, the Secretary of State has yet to determine whether to surrender Petitioner to Brazil. (*See* Dkt. 2 at 6–7.) Accordingly, this issue, as Petitioner

concedes, is not ripe for review. (*See id.*) *See Meza*, 693 F.3d at 1356. Even so, Petitioner argues that *Meza* is distinguishable because an immigration judge has determined that Petitioner will likely be tortured if he is sent to Brazil. (Dkt. 2 at 7.) But it is the Secretary of State, not an immigration judge, who decides whether an individual will be extradited. *See* 18 U.S.C. § 3186 ("The Secretary of State may order the person committed under sections 3184 or 3185 of this title to be delivered to any authorized agent of such foreign government, to be tried for the offense of which charged."); *Martin*, 993 F.2d at 829 ("Extradition ultimately remains an Executive function.").

This result is not inconsistent with Petitioner's right to due process. Although the court may not consider Petitioner's humanitarian concerns, the Secretary is required to do so. Title 22, Section 95.2 of the Code of Federal Regulations demonstrates that Petitioner will receive the requisite process regarding his Convention Against Torture claim:

> [T]he Secretary is the U.S. official responsible for determining whether to surrender a fugitive to a foreign country by means of extradition. In order to implement the obligation assumed by the United States pursuant to Article 3 of the Convention [Against Torture], the Department [of State] considers the question of whether a person facing extradition from the U.S. "is more likely than not" to be tortured in the State requesting extradition when appropriate in making this determination.

*See also Martin*, 993 F.2d at 829 ("After the courts have completed their limited inquiry, the Secretary of State conducts an independent review of the case to determine whether to issue a warrant of surrender."). Further, Petitioner will have an opportunity to submit materials to the Secretary of State for consideration:

> In determining whether a fugitive should be extradited, the Secretary may consider issues properly raised before the extradition court or a habeas court as well as any humanitarian or other considerations for or against surrender, *including whether surrender may violate the United States' obligations under the Convention Against Torture*. See 22 C.F.R. 95.1 et seq. *The Secretary also will consider any written materials submitted by the fugitive, his or her counsel, or other interested parties*.

Office of Law Enf't & Intelligence, *Extraditions*, U.S. Dep't of State, https://www.state.gov/extraditions (last visited Dec. 9, 2025) (emphasis added).

Courts have found this process sufficient to protect a petitioner's due process rights under the Constitution. For example, in *Peroff v. Hylton*, the petitioner sought habeas relief following the Secretary of State's decision to surrender the petitioner to Swedish officials under an extradition treaty. *See* 563 F.2d 1099, 1102 (4th Cir. 1977). Among other arguments, the petitioner asserted that he had been denied due process by the Secretary's "refusal to conduct a hearing" before issuing the warrant of extradition. *Id.* The Fourth Circuit denied the petition, concluding that, between the extradition hearing, the Secretary's consideration of the matter, and the petitioner's habeas petitions, the petitioner had received due process. *See id.* at 1102–03. As in *Peroff*, Petitioner was afforded an extradition hearing and has now received habeas review. To the extent that Petitioner believes "that extradition is unjust . . . on humanitarian grounds," he should direct his arguments to the Secretary of State. *Martin*, 993 F.2d at 830.

Further, Petitioner has not "made a substantial showing of the denial of a constitutional right"; therefore, the court will not issue a certificate of appealability.

*See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009). Thus, should Petitioner wish to appeal this court's order, he "must obtain permission from the Circuit Court to appeal in forma pauperis." *Ford v. Sec'y, Fla. Dep't of Corr.*, No. 8:16-CV-2866-JDW-JSS, 2021 WL 12240173, at *2 (M.D. Fla. Apr. 5, 2021). Any request to proceed in forma pauperis should be sent directly to the Eleventh Circuit Court of Appeals. *See* Fed. R. App. P. 24(a)(5).

## CONCLUSION

Accordingly:

1. The Petition (Dkt. 2) is **DISMISSED without prejudice**.

2. Petitioner fails to make a substantial showing of the denial of a constitutional right. Thus, Petitioner is **DENIED** a certificate of appealability.

3. The Clerk of Court is directed to **ENTER JUDGMENT** accordingly and **CLOSE** this case.

**ORDERED** in Orlando, Florida, on December 16, 2025.

_____
JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record